## Strouse License

*Frederick J. Bertolet*, for Secretary of Revenue.
*Richard H. Kutz*, for appellant.

MAYS, P. J., January 20, 1950.—This matter is before the court upon an appeal by Richard G. Strouse from an order of the Secretary of Revenue, suspending the license of appellant to operate a motor vehicle. The arresting officer gave a very terse description of the operation stating, inter alia:

"A. We followed this sedan and after clocking him for about a mile, pulled him over and wrote him up and got the necessary information. He was going 60 miles an hour.

"Q. What were the road conditions?

"A. Dry.

"Q. Daylight?

"A. Yes, sir.

"Q. Did he make any objection when you arrested him?

"A. No.

"Q. He was polite and courteous?

"A. Yes.

"Q. Was he cutting in and out at any time?

"A. No, sir. Traffic conditions were moderate. He was going in a straight line. There was not much traffic on the road.

"Q. The only violation you could observe when following him was an excess rate of speed?

"A. Yes, sir."

In Wagner Appeal, 42 Berks 101, in an opinion filed December 2, 1949, we stated: "Merely showing that there was a violation of the Code is not, in itself, sufficient to justify the suspension of the license for violation of the Code, whether it be the violation of the speed limit or any of these other sections referred to."

This is controlling here. There are no grave circumstances which would lead us to the conclusion that appellant was reckless or negligent without any evidence in mitigation of the offense. While it is true that appellant here violated the 50-mile speed limit, the testimony established that it occurred on a three-lane highway, the weather was clear and the road dry, that there was not much traffic on the highway, that there were no aggravated circumstances surrounding the operation of Strouse's automobile. The testimony further establishes that appellant has been driving a car for 35 to 40 years and was never arrested for violating The Vehicle Code. This, too, appears: That on this very day his sister was dying of cancer, that he was going to pick up the family and go to Blandon to see her before she died. In fact, she did die that very night.

Applying the facts and circumstances of the case to the pronouncement of this court in Wagner Appeal,

supra, we must conclude, as we did in that case, that the appeal should be sustained. Accordingly, it is so ordered.